**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 16-10107-DJC-5 |
| | ) | |
| **MICHAEL HABICHT,** | ) | |
|     Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On March 10, 2017, the defendant MICHAEL HABICHT ("HABICHT") pled guilty pursuant to a single charge of illegal gambling business (Count One). Sentencing is scheduled for June 13, 2017. Consistent with its representation at the change of plea hearing, for the reasons discussed below, contained in the Presentence Report, and to be stated at the hearing, the government respectfully requests that the Court impose the following sentence:

    (a)    incarceration for a term of five months;

    (b)    a fine of $4,000;

    (c)    36 months of supervised release, with the first five months in home detention; and

    (d)    a mandatory special assessment of $100.

**I.    BACKGROUND OF THE CASE**

This case arose from a Title III investigation by the FBI and Massachusetts State Police into a large loansharking and bookmaking operation headed by YERARDI, who is a longtime associate of organized crime in this district. In summary, YERARDI was at the top of a large bookmaking operation, which made use of a website where bets were placed. Under YERARDI were a number of agents and sub-agents, who had direct contact with gamblers. YERARDI supervised the operation, set gambling limits and tracked losses and winnings over the website.

YERARDI, assisted by CORSO, settled the accounts on a weekly basis, making payments to or collections from gamblers and agents.   PSR ¶¶ 8-9.

HABICHT was such an agent, with a bookmaking business.   PSR ¶¶ 14-28. HABICHT had sub-agents of his own and a number of gamblers.   PSR¶¶   He was in contact with YERARDI.   PSR ¶¶ 15, 17, 25.   He met regularly with his gamblers and, in turn, met with CORSO.   PSR ¶¶ 14, 16, 19, 22.   The bookmaking business was lucrative for HABICHT as well.   PSR ¶¶ 20, 22.

## II.   ADVISORY SENTENCING GUIDELINES ANALYSIS

The government adopts the guidelines analysis of Probation.   Pursuant to USSG § 2E3.1(a)(2)(A), the base offense level for illegal gambling business is **12**.   PSR ¶ 33.   The defendant receives a two level decrease for acceptance of responsibility.   PSR ¶ 40.   The total offense level is therefore **10**.   PSR ¶ 41.

Although defendant has numerous convictions, as discussed below, only convictions for attempted bank robbery, felon in possession of firearms, and carrying firearms in relation to a crime of violence and operating under the influence score, yielding four criminal history points. ¶¶ 50 and 51.   The defendant is Criminal History Category III.   PSR ¶ 53.

At total offense level 10 and CHC III, HABICHT's GSR is 10 to 16 months in Zone C.

## III.   SECTION 3553(a) FACTORS

The government requests a sentence of five months' imprisonment and five months' home detention.   This recommendation is at the low end of the GSR for Zone C, which permits the Court to substitute one day of home detention for one day of incarceration, so long as one half of the term is incarceration, and is consistent with the government's recommendation at the

change of plea hearing.    Examination of the § 3553(a) factors demonstrates that this sentence is warranted and reasonable.

  A.  **Characteristics of the Defendant**

  HABICHT is here because of his criminal record; that record drives the government's recommendation in this case.   His Criminal History Category of III belies the seriousness of his criminal history, because most of his convictions – which start at age 19 – do not score due to their age.

  HABICHT was convicted of assault at age 19; assault and battery with a dangerous weapon at age 20; possession of a firearm and silencer at age 20; possession of a silencer at age 20 (in federal court, based on the same facts as the previous conviction); and manslaughter and assault and battery with a dangerous weapon at age 27 for killing a man with a knife after a car accident.   PSR ¶¶ 44-48.

  HABICHT's most serious crimes occurred at age 33, and resulted in consecutive state and federal sentences for 16 years.   PSR ¶ 90.   Both involved participating in armed robbery crews, first targeting a bank and then armored trunks.   PSR ¶¶ 49-50.   Particularly in the case of the federal conviction, the crew was long running, well organized, and very well armed (an Uzi, machine gun with a silencer, grenade, and Molotov cocktails, among other weapons).   PSR ¶ 50.

  HABICHT has failed to conform to a law abiding life since his release from prison for those offenses.   During his period of supervised release, which ended in August 2008, he was arrested for operating under the influence and had frequent incidental contact with convicted

felons, PSR ¶¶ 50-51; he used marijuana and other illegal drugs, progressing to a heroin addiction, PSR ¶ 82; and he gambled illegally.   PSR ¶ 78.   This pattern culminated in the present prosecution for illegal gambling business.   In fact, since his indictment and release, HABICHT continued to gamble online occasionally, in violation of the terms of his pretrial release.   *Compare id*. *with* Order Setting Terms of Supervised Release, ¶ 7(t) ("Refrain from all forms of gambling or being present at any place where gambling occurs."), Dkt. No. 29.

### B.   Nature of the Offense and Respect for the Law

Bookmaking is a crime that remains pervasive in this society.   In the government's experience, it almost always leads to debt and frequently to the extortionate collection of those debts.   Those crimes are not victimless.   The government believes that the sentence requested here will promote respect for the law and generally deter others who might think to become involved in bookmaking or other forms of gambling.

## IV.   COMPARISON TO OTHER DEFENDANTS

Every defendant is sentenced independently for his own case and HABICHT is not situated similarly to his co-defendants, who were all convicted of extortionate extensions of credit and/or collecting by extortionate means in additional to illegal gambling.   However, even taking into account the different circumstances, the government's recommendation of a low-end sentence is consistent with its other recommendations in this case.   The Court has already sentenced YERARDI to 84 months (the low end of the Guidelines sentencing range), CORSO to 60 months (three months below the low end of the Guidelines sentencing range) and BURKE to 24 months (after the government recommended 27 months, which was 20% below the low end of the Guidelines sentencing range), all pursuant to C plea agreements.   The government would

have recommended 18 months for CONWAY, which would be a slightly larger variance than for BURKE. In the government's view, these sentences place the defendants in the correct order, sufficiently accounting for the seriousness of their respective offenses, their roles in the joint activity, relative criminal histories, number of victims, culpability, and even profit.

## V. THE GOVERNMENT'S RECOMMENDATION

For the reasons stated above, and pursuant to 18 U.S.C. §3553(a), the government requests that the Court impose the following sentence:

- a sentence of imprisonment for a term of five months;
- a $4,000 fine;
- supervised release for a term of 36 months, with the first five months in home detention; and
- a $100 special assessment.

Respectfully submitted,

WILLIAM D. WEINREB
ACTING UNITED STATES ATTORNEY

By:  s/ Timothy E. Moran
TIMOTHY E. MORAN
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

  I, Timothy E. Moran, Assistant U.S. Attorney, certify that I caused a copy of the foregoing sentencing memorandum to be served by ECF notice to defense counsel.

               s/ Timothy E. Moran
               TIMOTHY E. MORAN
               Assistant U.S. Attorney

Dated: June 9, 2017